**E-FILED**
Wednesday, 15 February, 2012  11:00:03 AM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| In re JEFFREY R. PROCHNOW, | ) | |
| | ) | |
| Debtor, | ) | |
| | ) | |
| JEFFREY R. PROCHNOW, | ) | No. 11-3392 |
| | ) | |
| Appellant, | ) | |
| | ) | Appeal from the United |
| v. | ) | States Bankruptcy Court, |
| | ) | Central District of Illinois, |
| APEX PROPERTIES, INC., d/b/a | ) | Case No. 09-72295 |
| REMAX CHOICE OF | ) | Hon. Mary Gorman, U.S. |
| BLOOMINGTON, ILLINOIS, | ) | Bankruptcy Judge, |
| | ) | presiding |
| Appellee. | ) | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Debtor/Appellant, Jeffrey R. Prochnow, appeals from the denial of his Motion for a Ruling Against a Creditor Based on Violations of the Automatic Stay.   For the reasons set forth below, the decision of the Bankruptcy Court is AFFIRMED.

## STATEMENT OF FACTS[1]

---

[1] The parties filed, in the bankruptcy court, a Joint Stipulation of Facts (Stipulation), from which the majority of the following facts are taken.

Prochnow was at all relevant times a duly licensed salesperson – also referred to as a realtor or realtor associate – as defined in the Real Estate Licence Act of 2000 (225 ILCS 454/1-10 (West 2008)). (Stipulation ¶ 3).  Apex Properties Inc., d/b/a Remax Choice of Bloomington, Illinois (ReMax) was at all relevant times a duly licensed real estate broker.  (Stipulation ¶ 4).

In August 2006, Prochnow and ReMax, through its predecessor, entered into a Broker-Realtor-Associate Contract (Associate Contract). (Stipulation ¶ 5).  The compensation paid to Prochnow and other realtor-associates licensed with ReMax was arranged on a commission basis. (Stipulation ¶ 7).

The Associate Contract provided:

> Broker agrees to pay Realtor-Associate as and for Realtor-Associate's compensation for services rendered on a commission basis for work done by Realtor-Associate in accordance with the commission schedule adopted by the Broker's office and in the Policy Manual.  No commissions shall be considered earned or payable to Realtor-Associate until the transaction has been completed and the commission has been collected by the Broker.

The Associate Contract also provided that bills paid by ReMax that were actually the responsibility of Prochnow would be due within 30 days of receipt. The parties stipulated, however, that the arrangement on commissions (which this Court interprets as referring to the percentage of commissions) was not placed in writing and that some arrangements regarding expenses were not placed in writing. (Stipulation ¶ 9).

Initially, Prochnow received 100% of commissions, less franchise and referral fees. (Stipulation ¶ 8). Under that arrangement, Prochnow also paid rent, certain expenses (including general overhead, expenses required by the local MLS office, and advertising expenses), and interest for unreimbursed charges. (Stipulation ¶ 8). In October 2007, the parties changed the arrangement so that Prochnow would receive 70% of the commissions he earned with the remaining 30% payable to ReMax. (Stipulation ¶ 8). Under the new arrangement, Prochnow was no longer charged rent but still paid office overhead, other billed expenses, and interest on outstanding balances. (Stipulation ¶ 8).

Historically, ReMax applied a portion of the commission owed to

Prochnow to Prochnow's billed expenses.  (Stipulation ¶ 9).  The amount

of the commission applied to expenses was based on the determination of

the ReMax broker,  in consultation with Prochnow, and changed from

time to time to allow Prochnow to retain some commission.  (Stipulation

¶ 9)

On August 3, 2009, Prochnow filed his Chapter 7 bankruptcy

petition.  Prochnow was at that time still a realtor-associate with ReMax

and continued in that capacity until January 8, 2010.

On his Schedule F, Prochnow listed an unsecured debt owed to

ReMax in the amount of $51,027.47.  That debt related to the expenses

billed by ReMax which were unpaid at the filing of the petition.

(Stipulation ¶ 13).

On his Schedule B, Prochnow affirmatively represented that he had

no accounts receivable, no liquidated debts owed to him, and no

contingent or unliquidated claims of any nature.  On his Schedule G,

Prochnow affirmatively represented that he had no executory contracts of

any nature.

On September 3, 2009, the Chapter 7 Trustee filed a Report of No Distribution stating he found no assets to administer in the case.  On December 3, 2009, Prochnow was granted a discharge.  On January 8, 2010, Prochnow ceased working as a realtor-associate with ReMax. (Stipulation ¶ 6).  On February 23, 2010, Prochnow's bankruptcy case was closed.

On June 16, 2010, Prochnow, represented by new counsel, filed a Motion to Reopen Case.  In the Motion, Prochnow alleged that he became entitled to the payment of compensation from ReMax for real estate commissions from three closings occurring after August 3, 2009, the date Prochnow filed his bankruptcy petition.  Prochnow alleged he was entitled those commissions but that ReMax applied the commissions to Prochnow's pre-petition indebtedness to ReMax.  (The commissions were retained by ReMax after the filing of the bankruptcy petition but before discharge.)  Prochnow asked that the bankruptcy case be reopened for the purpose of hearing his motion to hold ReMax in contempt for violation of the automatic stay.

Over the objection of ReMax, the bankruptcy court granted the Motion to Reopen Case.  Thereafter, Prochnow filed a Motion for a Ruling Against a Creditor Based on Violation of the Automatic Stay, containing substantially the same allegations as those contained in the Motion to Reopen Case.  Prochnow sought an order holding ReMax held in contempt of court for violation of the automatic stay, money damages in the amount of $15,322, and attorney fees.

The commissions at issue included: (1) a commission of $13,829.17 for a sale procured by Prochnow pre-petition but that closed post-petition (the Hudson contract); (2) a commission of $921.09 for a sale procured and closed post-petition (the Bayberry contract); and (3) a referral commission of $573.30 for a sale that closed post-petition (the Fifth Street contract).   (Stipulation ¶¶ 15, 16, 17, 18, 19).  The parties stipulated that the Fifth Street and Bayberry contract commissions were applied to Debtor's post-petition expenses.  (Stipulation ¶¶ 18, 19).  The parties also stipulated that Prochnow incurred $3,596.03 of post-petition business expenses billed by ReMax to Prochnow to continue to operate

his real estate business following the filing of the bankruptcy petition. (Stipulation ¶ 14).  However, Prochnow disputed he had any liability for interest assessed on the pre-petition debt.  (Stipulation ¶ 14).  The documents attached to the Stipulation show that the post-petition business expenses, minus the interest charges, totaled $1,600.50.

In May 2011, the parties filed their Stipulation.  In June 2011, the parties filed cross motions for summary judgment.  <u>See</u> Bankruptcy Rule 7056 (providing that Rule 56 of the Federal Rules of Civil Procedure apply in adversary proceedings).  In its Motion for Summary Judgment, ReMax argued the Fifth Street and Bayberry contract commissions were properly applied to Prochnow's post-petition debt.  ReMax further argued that all the commissions were properly retained by ReMax pursuant to the doctrine of recoupment.

In his Motion for Summary Judgment, Prochnow argued that he had earned the Hudson transaction commission post-petition and that money was not subject to recoupment.  Prochnow conceded that he owed the post-petition expenses billed to him, excluding the interest on the

pre-petition indebtedness.

The bankruptcy court granted ReMax's Motion for Summary Judgment, denied Prochnow's Motion for Summary Judgment, and denied Prochnow's Motion for a Ruling Against a Creditor Based on Violation of the Automatic Stay.  In re Prochnow, ____ B.R. ___, ____ 2011 WL 4424269, at *9 (Bankr. C.D. Ill. 2011).  First, the bankruptcy court found that Prochnow had earned the Hudson contract commission pre-petition and that it was part of the bankruptcy estate.  Id. at ___, 2011 WL 4424269, at *5.  Because Prochnow failed to disclose his interest in a share of the Hudson contract commission on his schedules, the bankruptcy court found he was judicially estopped from claiming an interest in those funds.  Id.

Second, the bankruptcy court found that Prochnow lacked standing to pursue the Hudson contract commission because his entitlement to the commission became property of the estate and was never abandoned by the Trustee.  Id. at ___, 2011 WL 4424269, at *6.  The bankruptcy court noted that "[t]hese findings are not an invitation to [Prochnow] to

seek reappointment" of the Trustee because (1) even if the Trustee were reappointed and abandoned the commission, "the principles of judicial estoppel would still apply to limit [Prochnow's] claim to the undisclosed commission" and (2) if the Trustee pursued the commission, ReMax would prevail on its defense of recoupment." <u>Id.</u>   Third, the bankruptcy court found that ReMax's retention of all of the commissions at issue was in the nature of recoupment and did not violate the automatic stay.  <u>Id.</u> at ____, 2011 WL 4424269, at *6-7.  Finally, the bankruptcy court found that "even if ReMax's actions were in the nature of setoff rather than recoupment, ReMax would ultimately have prevailed in its attempt to retain [Prochnow's] share of the Hudson [transaction] commission." <u>Id.</u> at ___, 2011 WL 4424269, at *8.

This appeal followed.

## JURISDICTION

The Court has appellate jurisdiction over this matter pursuant to 28 U.S.C. § 158 and Rule 8001 of the Federal Rules of Bankruptcy

Procedure.

## STANDARD OF REVIEW

This court reviews the bankruptcy court's determination on the cross motions for summary judgment de novo.  See In re Solis, 610 F.3d 969, 971 (7th Cir.2010).  However, the bankruptcy court's determination that Prochnow was judicially estopped from pursuing the commission is reviewed for an abuse of discretion.  See  Commonwealth Ins. Co. v. Titan Tire Corp., 398 F.3d 879, 887 (7th Cir. 2004) (noting that "judicial estoppel is a matter of discretion" but that "errors of law require plenary review").

## ANALYSIS

On appeal, Prochnow argues: (1) he should not be judicially stopped from claiming any interest in the Hudson contract commission because said commission was earned post-petition and was not an asset of the bankruptcy estate; and (2) the recoupment doctrine does not apply.  Prochnow appears to challenge on appeal only ReMax's application of the Hudson contract commission to the pre-petition debt

and not the Fifth Street and Bayberry contract commissions.  In any event, this Court finds that the commissions on the Fifth Street and Bayberry contracts, resulting in commissions totaling $1,494.39,  were earned post-petition and were properly applied to the post-petition debt totaling $1,600.50.  See, e.g., In re Davis, 244 B.R. 776, 789 (Bankr. N.D. Ill. 2000) (post-petition earnings are not part of the Chapter 7 bankruptcy estate); In re Rosteck, 899 F.2d 694, 696 (7th Cir. 1990) (noting that debts that arise after the filing of the bankruptcy case are not discharged).  Therefore, this Court considers only the Hudson contract commission below.

A.    Because the Commission Was Property of the Estate, Prochnow Lacks Standing, and, Alternatively, Is Judicially Estopped From Pursuing the Commission

On appeal, Prochnow argues that he should not be judicially estopped from claiming any interest in the Hudson contract commission because he was not required to disclose the commission on his bankruptcy petition. Specifically, Prochnow asserts the commission was earned post-petition, when the real estate closing occurred.  In support

thereof, Prochnow relies on the language of the Associate Contract which specifically provides: "No commissions shall be considered earned or payable to Realtor-Associate until the transaction has been completed and the commission has been collected by the Broker."  Prochnow further argues that because "[t]he rights under the contract at issue were not contingent or executory at the time of the filing of the Petition for Voluntary Relief", the commission was not an asset he had to disclose.

ReMax responds that the bankruptcy court did not err by finding that the commission earned was the property of the bankruptcy estate and that Prochnow was judicially estopped from claiming an interest in the commission.  ReMax asserts that because ReMax was entitled to the real estate commission at the time of filing, and because Prochnow was in privity with ReMax , Prochnow's right to his share of the commission was vested when Prochnow filed for bankruptcy.

1.  <u>The Commission Was Part of the Bankruptcy Estate</u>

The bankruptcy court found that the Hudson contract commission was part of the bankruptcy estate.  "Whether property is included in the

bankruptcy estate is a question of law."  In re Parsons, 280 F.3d 1185, 1188 (8th Cir. 2002).  "To determine the nature of a debtor's interest in property, we look to state law; to determine whether that interest counts as property of the debtor's estate, we look to federal bankruptcy law."  In re Krueger, 192 F.3d 733, 737 (7th Cir. 1999).

Section 541(a) of the Bankruptcy Code defines "property of the estate" to include "all legal or equitable interests of the debtor in the property as of the commencement of the case."  11 U.S.C. §541(a)(1). This definition of property of the estate is broad–"including interests of all types and degrees of contingency"– but is generally limited to interests in existence at the time of the commencement of the case.  In re Taronji, 174 B.R. 964, 967 (Bankr. N.D. Ill. 1994).

"Section 541(a)(6) expands this basic definition of property of the estate to include certain property interests that are acquired after the commencement of the case."  Id.  "However, Section 541(a)(6) contains an express exception, exempting 'earnings from services performed by an individual debtor after the commencement of the case.'"  In re Jokiel, 447

B.R. 868, 871 (Bankr. N.D. Ill. 2011) (quoting 11 U.S.C. § 541(a)(6)).

On appeal, Prochnow essentially argues that he earned the commission post-petition because the Associate Contract provided that commissions were not earned until the transaction (i.e. the closing on the property) had been completed and the commission was collected by ReMax.  This Court first notes that the provision in the Associate Contract merely made Prochnow's interest contingent.  Under Illinois law, a broker (which in this case would be ReMax), is entitled to a commission for the sale of real estate when he procures a buyer who is ready, willing, and able to purchase the real estate on the terms prescribed by the seller.  See Intergroup Financial Serv. v. A-G Cooperative Creamery, 1991 WL 235182, at *2 (N.D. Ill. 1991) (noting the general rule in Illinois but also noting that where there are contingencies in the contract that render it unenforceable by the seller, the broker is not entitled to a commission if the contingencies are not met).  As the bankruptcy court noted, "once the Hudson [c]ontract was signed and the financing contingency set forth in the contract was met,

ReMax, as the broker in the transaction, had earned its commission." <u>In re Prochnow</u>, __ B.R. at ___, 2011 WL 4424269, at *5.

This Court notes that the Associate Contract provided that Prochnow had not earned the commission until the transaction was completed, which occurred post-petition.  However, at the time Prochnow filed his bankruptcy petition, he had a contingent interest in his portion of the commission.  "A debtor's contingent interest in future income has consistently been found to be property of the bankruptcy estate."  <u>In re Yonikus</u>, 996 F.2d 866, 869 (7th Cir. 1993).  In fact, "[a] contingency is no bar to [a] property interest becoming property of the bankruptcy estate, even if the contingency requires additional post-petition services, and even if the right to enjoyment of the property may be defeated."  <u>In re Allen</u>, 226 B.R. 857, 865 (Bankr. N.D. Ill. 1998).

Moreover, the test for determining whether post-petition income is property of the bankruptcy estate depends on whether the income accrues from pre-petition or post-petition services.  <u>See In re Laflamme</u>, 397 B.R. 194, 199 (Bankr. D. N.H. 2008) (commissions received post-

petition are property of the estate if "all acts of the debtor necessary to earn it are rooted in the pre-bankruptcy past") (internal quotation marks omitted).  As stated by the Seventh Circuit, in a case involving a tax refund,  "[t]he background rule under the old Bankruptcy Act, to which courts still refer in the era of the Bankruptcy Code, defines the bankruptcy estate to include property that is 'sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupts' ability to make an unencumbered fresh start.'"  In re Meyers, 616 F.3d 626, 628 (7th Cir. 2010) (quoting Segal v. Rochelle, 382 U.S. 375, 380 (1966)).

Although Prochnow's  right to the commission may have vested post-petition, the payment was actually for pre-petition services.  See In re Jokiel, 447 B.R. at  872 (noting that the key issue to determining whether a post-petition severance payment was property of the bankruptcy estate was "whether the severance payment was rooted in pre- or post-petition services").  When Prochnow filed his petition for bankruptcy, the amount of the commission was clearly established.  In addition, Prochnow had done all he needed to do to receive the

commission even though the commission was contingent on the transaction actually being completed.  See, e.g., In re Dzielak, 435 B.R. 538, 546 (Bankr. N.D. Ill. 2010) (finding that the debtor's potential interest in a 401(k) plan was property of the estate even though the divorce court had not yet issued an order distributing an interest in the property; the debtor had "a claim for, or a contingent interest in, all or part of the retirement account").  Prochnow has not identified any services performed post-petition which would suggest the need to allocate the commission between pre- and post-petition services.  See, e.g., In re Bagen, 186 B.R. 824, 829 (Bankr. S.D.N.Y. 1995) (finding that the debtor's "pre[-]petition contingent contractual rights to postpetition property is property of the estate" but allocating the sum between pre- and post- petition services), aff'd 201 B.R. 642 (S.D.N.Y. 1996).  Therefore, this Court finds that the bankruptcy court properly found that Prochnow's portion of the commission for the Hudson contract was property of the bankruptcy estate.  See In re Calder, 94 B.R. 200, 203 (Bankr. D. Utah 1988) (finding "no doubt that the post-petition earnings

of this debtor are in actuality 'proceeds' from pre-petition services and these earnings are property of the estate); In re Braddy, 226 B.R. 479, 483 (Bankr. N.D. Fla. 1998) (insurance renewal commissions received as a result of services performed prior to filing for bankruptcy and not contingent upon future services to be performed by the debtor were property of the bankruptcy estate); see also, e.g., In re Dynacircuits, L.P., 143 B.R. 174, 178 (Bankr. N.D. Ill. 1992) (debtor's salesman's commissions that were by contract not "earned" until the customers paid, which occurred post-petition, were not entitled to administrative expense priority because the services occurred pre-petition).

2.  Prochnow Lacks Standing or, Alternatively, Is Judicially Estopped From Pursuing the Commission

After finding that the Hudson contract commission was part of the bankruptcy estate, the bankruptcy court concluded that: (1) Prochnow failed to disclose the commission and was therefore judicially estopped from claiming an interest in the commission; (2) Prochnow had no standing to pursue the commission because the commission became property of the estate and was never abandoned by the Trustee; and (3)

those findings were not an invitation to Prochnow to seek reappointment

of the Trustee because (a) even if the Trustee was reappointed and

abandoned the commissions, judicial estoppel would still apply to limit

Prochnow's claims to the undisclosed commission and (b) ReMax would

nonetheless prevail on its defense of recoupment.  In re Prochnow, ___

B.R. at ___, 2011 WL 4424269, at *6.

On appeal, Prochnow only addresses the bankruptcy court's finding

that ReMax would prevail on its defense of recoupment.  Prochnow does

not address judicial estoppel except on the ground that the commission

was not part of the bankruptcy estate.  Neither does Prochnow address

the bankruptcy court's conclusion that Prochnow lacked standing to

pursue the commission because it was property of the estate never

abandoned by the trustee.  Therefore, Prochnow has forfeited these

arguments and this Court need not address them.  See, e.g., In re

McCormick Road Associates, 127 B.R. 410, 416 (N.D. Ill. 1991) (finding

that the appellant's "failure to address why the Bankruptcy Court's

application of a 'clear and convincing' standard was erroneous forfeit[ed]

the point").

For the sake of completeness, however, the Court will address

standing and judicial estoppel.  See Biesek v. Soo Line RR Co., 440 F.3d

410, 413 (7th Cir. 2006) (stating that before a court considers the

judicial estoppel issue, it should first consider whether the debtor or the

trustee is the real party in interest).  Because the commission was part of

the bankruptcy estate and the Trustee did not abandon the claim (having

not known about it), Prochnow lacks standing to pursue the commission.

See Esparaza v. Costco Wholesale Corp., 2011 WL 6820022, at *3

(N.D. Ill. 2011) (debtor lacked standing to bring a cause of action that

was part of the bankruptcy estate where the trustee had not abandoned

the claim); Becker v. Verizon North, Inc., 2007 WL 1224039, at *1 (7th

Cir. 2007) (unpublished disposition) ("A debtor who fails to disclose 'an

asset, including a chose in action or other legal claim, cannot realize on

that concealed asset after the bankruptcy ends'") (citations omitted)).

Moreover, this Court finds that even if the Trustee did abandon the

claim, thereby giving Prochnow standing, Prochnow is judicially estopped

Page 20 of  29

from pursuing the commission.  See <u>Cannon-Stokes v. Potter</u>, 453 F.3d 446, 448 (7th Cir. 2006) (noting that "[j]udicial estoppel is an equitable doctrine, and it is not equitable to employ it to injure creditors who are themselves victims of the debtor's deceit", but applying judicial estoppel to the debtor where the trustee had abandoned any interest in the litigation, such that the creditors no longer had an interest either).   The factors considered when determining whether to apply judicial estoppel include: whether the party to be estopped (1 ) took a position inconsistent with an earlier position; (2) convinced a court to accept the earlier position such that "judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled'"; and (3) "would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." <u>New Hampshire v. Maine</u>, 532 U.S. 742, 750-51 (2001) (quoting <u>Edwards v. Aetna Life Ins. Co.</u>, 690 F.2d 595, 599 (6th Cir. 1982)). This Court reviews the bankruptcy court's decision to employ judicial estoppel for an abuse of discretion.  <u>Commonwealth Ins. Co. v. Titan</u>

Tire Corp., 398 F.3d 879, 887 (7th Cir. 2004) (noting that "judicial

estoppel is a matter of discretion" but that "errors of law require plenary

review'); In re Pansier, 2011 WL 6323020, at *3 (7th Cir. 2011)

(unpublished) (noting that application of judicial estoppel was within the

discretion of the bankruptcy court).

Here, the bankruptcy court did not abuse its discretion by finding

Prochnow was judicially estopped from pursuing the Hudson contract

commission.  Each of the factors for applying judicial estoppel weigh in

favor of applying judicial estoppel.

Prochnow was required to disclose any assets on his schedule when

he filed his bankruptcy petition.  See 11 U.S.C. 521(a)(1)(B)(i)

(requiring that a debtor file a schedule of assets); 11 U.S.C. § 101(5)(A)

(defining a claim to include a "right to payment, whether or not such

right is reduced to judgment, liquidated, unliquidated, fixed, contingent,

matured, unmatured, disputed, undisputed, legal, equitable, secured, or

unsecured").  As this Court noted above, Prochnow's interest in the

Hudson contract commission at the time he filed for bankruptcy was part

of the bankruptcy estate.  Prochnow had a duty to report that

commission.  "Debtors have an absolute duty to report whatever interests

they hold in property, even if they believe their assets are worthless or are

unavailable to the bankruptcy estate." In re Yonikus, 974 F.2d at 904

(citations omitted).

However, Prochnow represented on his schedules that he had no

accounts receivable, no liquidated debts owed to him, and had no

contingent or unliquidated claims of any nature.  The Trustee and

bankruptcy court relied on Prochnow's assertion, which ultimately

resulted in Prochnow receiving a discharge.  Prochnow now seeks the

Hudson contract commission by way of his Motion for a Ruling Against a

Creditor Based on Violations of the Automatic Stay.  Allowing Prochnow

to pursue the Hudson contract commission now, after his failure to

disclose the asset in his bankruptcy petition, would give Prochnow an

unfair advantage and impose an unfair detriment on Prochnow's

creditors.

The Seventh Circuit has held that "a debtor in bankruptcy who

denies owning an asset, including a chose in action or other legal claim,

cannot realize on that concealed asset after the bankruptcy ends."

Cannon-Stokes, 453 F.3d at 448 (citing cases).  That is precisely what

Prochnow is attempting to do here.  The bankruptcy court did not

therefore abuse its discretion by finding Prochnow was judicially

estopped from pursuing the commission.

B.     ReMax Was Entitled to the Commission Pursuant to the Doctrine
       of Recoupment

Finally, this Court also agrees with the bankruptcy court's

conclusion that even if the Trustee were to pursue the commission for the

benefit of the estate or even if Prochnow pursued the commission upon

abandonment by the Trustee, ReMax would prevail on its defense of

recoupment.  See In re Chapman, 265 B.R. 796, 807 (Bankr. N.D. Ill.

2001) ("The weight of authority holds that recoupment does not violate

the automatic stay"), aff'd 2001 WL 818300 (N.D. Ill. 2002).

The bankruptcy court found that recoupment applied because

Prochnow's claim against ReMax arose from the contractual obligation of

ReMax to pay Prochnow commissions pursuant to the terms of the

Page 24 of  29

Associate Contract.  <u>In re Prochnow</u>, ____ B.R. ___, ____  2011 WL 4424269, at *7.  The bankruptcy court further noted that ReMax's claim against Prochnow arose from Prochnow's obligation to reimburse ReMax for expenses advanced pursuant to the Associate Contract.  <u>Id.</u>  The court found "the rights of the parties pursuant to the Associate Contract are so intertwined that [the bankruptcy court] must find that the obligations do arise from the same transaction."  <u>Id.</u>

On appeal, Prochnow argues that recoupment does not apply because there was no advancement of compensation and that ReMax merely billed Prochnow on a monthly basis for current expenses, not future expenses.  Moreover, Prochnow asserts that no evidence tied any of the expenses billed pre-petition to the post-petition event that created the compensation at issue.  Finally, Prochnow argues that the billed expenses constituted unsecured debt that did not arise from a "transaction."  Prochnow argues, "[i]f it were transactional, then the entire working life and career of a real estate salesperson would be one big, unending transaction."  Appellant Brief, p. 15.

ReMax argues that the expenses Prochnow owed to ReMax and the

commissions earned by Prochnow pre-petition both arose out of the

unwritten agreement between Prochnow and ReMax relating to

commission and expenses.  ReMax argues that ReMax agreed to pay

ongoing business expenses by Prochnow and to be subsequently

reimbursed by Prochnow from the commissions earned by Prochnow.

Therefore, ReMax argues, Prochnow's earnings were always subject to the

debt owed to ReMax, which rendered ReMax's payment of Prochnow's

business expenses an "advance" on his commissions. According to

ReMax, to allow Prochnow to retain his commission– earned entirely

through pre-petition efforts–but at the same time discharging the debt

ReMax paid for advances of Prochnow's business expenses, would be

unjust.

"Recoupment is an equitable remedy which permits the offset of

debts when the respective obligations are based on the same transaction

or occurrence." In re World Access, Inc., 324 B.R. 662, 686 (Bankr.

N.D. Ill. 2005) (also noting that the justification for the doctrine is that

it would be inequitable not to treat the creditor's claim as a defense to the debtor's claim); see also In re Klinberg Schools, 68 B.R. 173 (N.D. Ill. 1986), aff'd 837 F.2d 763 (7th Cir. 1988).  The "same transaction" criteria is met where there is a "close, necessary relationship between the events that gave rise to the debtor's post-petition claim and the events that gave rise to the creditor's pre-petition claim that the amount of the former cannot fairly be determined with accounting for the latter."  In re St. Francis Physician Network, Inc., 213 B.R. 710, 719 (Bankr. N.D. Ill. 1997).  Recoupment may also apply where the "transactions are so intertwined that the amount of one cannot be determined without resolving the latter."  In re Clark Retail Enterprises, Inc., 2003 WL 21991624, at *11 (Bankr. N.D. Ill. 2003).  Although the same transaction requirement may be met when the two claims arise from a single contract, the existence of a single contract does not automatically satisfy the "same transaction'" requirement.  In re St. Francis, 213 B.R. at 719.

In this case, the parties stipulated to a historical practice of

applying a portion of Prochnow's commissions earned to outstanding

expenses billed.  The practical effect of this practice was that ReMax, in

essence, advanced commissions to Prochnow.  Without those

"advancements", Prochnow could not have earned the Hudson contract

commission.  Prochnow's claim to his portion of the Hudson contract

commission and ReMax's claim to reimbursement of the business

expenses advanced are so intertwined that Prochnow's claim cannot be

adjudicated without also resolving ReMax's claim.  Therefore, this Court

finds the bankruptcy court did not err in finding that ReMax's retention

of the Hudson contract commission constituted a recoupment.  <u>See</u>, <u>e.g.</u>,

<u>Waldschmidt v. CBS, Inc.</u>, 14 B.R. 309, 314 (D.C. Tenn. 1981)

(allowing a recoupment, finding that the post-petition royalties for pre-

petition work could be withheld by the creditor until the pre-petition

advancements the creditor made to the debtor had been recovered); <u>In re</u>

<u>Kosadnar</u>, 157 F.3d 1011, 1016 (5th Cir. 1998) (finding the withholding

of commissions constituted a recoupment where the "repayment of the

unearned and advanced commissions arise out of the same commission

pool and employment contract as the commissions earned by [the

debtor] for which he is paid").

THEREFORE, the decision of the Bankruptcy Court is

AFFIRMED.  This case is closed.

ENTER: February 15, 2012

FOR THE COURT:

                          _____s/Sue E. Myerscough_____
                          SUE E. MYERSCOUGH
                          UNITED STATE DISTRICT JUDGE